IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| STEVE KOVACHEVICH, *on behalf of himself and all similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>LOANCARE, LLC and NATIONAL MORTGAGE INSURANCE CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 2:22-cv-468<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

1. Plaintiff Steve Kovachevich, on behalf of himself and all similarly situated individuals, alleges as follows for his Class Action Complaint against Defendants LoanCare, LLC and National Mortgage Insurance Corporation ("NMIC").

## PRELIMINARY STATEMENT

2. "In 1998, Congress enacted" the Homeowners Protection Act ("HPA") to "establish Federal guidelines for disclosure and termination of private mortgage insurance (PMI)." *Fried v. JPMorgan Chase & Co.*, No. 15-2512, 2016 WL 347314, at *2 (D.N.J. 2016) (quoting H.R. Rep. No. 105-55, at 4 (1997)). While acknowledging PMI's "important role" of providing "low-income borrowers or borrowers with little cash greater access to home ownership," Congress nonetheless found that "homeowners are not always informed when PMI is required, and if it is, how it can be terminated." H.R. Rep. No. 105-55, at 6. Thus, Congress enacted the HPA "to establish Federal standards for disclosure and termination of PMI *so that borrowers do not pay for insurance after all parties in the mortgage process agree that such insurance is no longer necessary*." *Id*. (emphasis added).

3. In furtherance of this purpose, the HPA requires that mortgage servicers automatically terminate PMI on the date on which the principal balance of the loan is first scheduled to reach 78 percent of the "original value" of the property securing the loan, provided that the homeowner is current on payments. 12 U.S.C. §§ 4901(18), 4902(b). The HPA also allows homeowners to request cancellation of PMI if the principal balance on the mortgage declines to 80 percent of the original value of the property or if they satisfy any other requirements imposed by the holder of the mortgage. *Id.* §§ 4901(2), 4902(a).

4. After termination or cancellation of PMI, any unearned premiums paid by the homeowner must be returned to the homeowner no later than 45 days after the termination or cancellation. *Id.* § 4902(f)(1).[1] And if unearned premiums are held by a mortgage *insurer* instead of a mortgage *servicer*, the insurer must transfer those funds to the servicer within 30 days of notice. 12 U.S.C. § 4209(f)(2). This requirement ensures that the funds are ultimately (and timely) returned to homeowners in accordance with the requirement of § 4209(f)(1).

5. Despite the HPA's straightforward directives, Plaintiff has yet to receive nearly $4,000 in unearned PMI premiums that he paid upfront when he purchased his home in July 2020. To be sure, Plaintiff's PMI obligations were terminated on July 1, 2021—just 12 months after he paid $4,582.80 for over six years of PMI. Thus, although Plaintiff became entitled to all unearned PMI premiums within 45 days after his PMI obligations were terminated, that money was instead pocketed by his then-mortgage servicer (LoanCare) and/or his mortgage insurer (NMIC).

---

[1] Although "unearned premiums" is not defined by the HPA, one commentator explained that "unearned premiums are the portion of a premium, net of any amount ceded, that represents coverage that has not yet been provided or that will belong to the insurer based on the part of the policy period to elapse in the future." Quintin Johnstone, *Private Mortgage Insurance*, 39 Wake Forest L. Rev. 783, 819 n.152 (2004) (cleaned up) (citation omitted).

6. In other words, LoanCare and/or NMIC benefitted from insurance premiums after any risk to the lender had been extinguished. *See* Consumer Financial Protection Bureau, *What is private mortgage insurance?*, https://www.consumerfinance.gov/ask-cfpb/what-is-private-mortgage-insurance-en-122 (Sep. 4, 2020) ("PMI protects the lender—not you—if you stop making payments on your loan.").

7. By failing to return unearned premiums as the mortgage *servicer* of Plaintiff's loan, LoanCare violated 12 U.S.C. § 4902(f)(1). Upon information and belief, LoanCare refuses to return unearned PMI premiums as a matter of company policy.

8. In addition, or alternatively, by failing to return unearned premiums as the mortgage *insurer* of Plaintiff's loan, NMIC violated 12 U.S.C. § 4902(f)(2). Upon information and belief, NMIC refuses to return unearned PMI premiums as a matter of policy. NMIC does so by claiming that unearned premiums are "non-refundable." The HPA, however, does not distinguish between "refundable" and "non-refundable" premiums—only "earned" and "unearned" premiums.

9. Plaintiff and the putative class members are entitled to—against both defendants or against either of them—actual damages (including interest), statutory damages up to the lesser of $500,000.00 or 1 percent of the net worth of the liable party, costs, and attorneys' fees. *See* 12 U.S.C. § 4907(a).

10. LoanCare also violated the Real Estate Settlement Procedures Act ("RESPA") when it failed to: (1) correct its failure to return Plaintiff's unearned premiums following written notice from Plaintiff; and (2) provide Plaintiff with documents so that he could further explore LoanCare's and NMIC's respective noncompliance with the HPA. *See* 12 U.S.C. § 2605(e)(2).

11. Plaintiff is entitled to his actual damages, statutory damages, costs, and attorneys' fees for LoanCare's RESPA violations. *See* 12 U.S.C. § 2605(f).

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. § 1331.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, where LoanCare is headquartered.

## PARTIES

14. Plaintiff is a natural person who resides in the Commonwealth in Virginia. He is a "mortgagor" as defined by the HPA at 12 U.S.C. § 4901(11).

15. LoanCare is a limited liability company headquartered in Virginia Beach, Virginia. LoanCare is a "servicer" as defined by the HPA at 12 U.S.C. § 4901(16) and, through reference, the RESPA at 12 U.S.C. § 2605(i)(2).

16. NMIC is a corporation headquartered in Emeryville, California. NMIC is a mortgage insurer as defined by the HPA at 12 U.S.C. § 4901(8).

## FACTS

17. On or about July 17, 2020, Plaintiff borrowed $577,432.00 from McLean Mortgage Corporation to purchase a home for $636,500.00 in Brambleton, Virginia.

18. As part of that transaction, Plaintiff prepaid PMI in the amount of $4,582.80, which—upon information and belief—was paid directly to NMIC.

19. That amount was calculated to cover PMI payments until Plaintiff's loan balance was scheduled to reach 78 percent of the "original value" of the home, assuming Plaintiff made scheduled loan payments.

20. With his closing documents, Plaintiff received a "Private Mortgage Insurance Disclosure," which stated that his PMI would automatically terminate on September 1, 2026. That

letter also advised Plaintiff that he had a right to cancel his PMI before that date if certain conditions were met.

21. In or around April 2021, Plaintiff requested that LoanCare—the then-servicer of his mortgage—cancel his PMI as it was no longer necessary following home improvements and market conditions that increased the value of his home.

22. LoanCare denied Plaintiff's request, indicating that his "loan-to-original value (LTOV) ratio [was] not 80% or less based on the current unpaid principal balance."

23. LoanCare, however, informed Plaintiff that he could alternatively cancel his PMI coverage based on the *current value* of his property if certain other conditions were met. Among those conditions, Plaintiff had to obtain a Broker Provided Opinion from LoanCare, which cost Plaintiff $105.00.

24. At all times, as the servicer of Plaintiff's mortgage, LoanCare knew that Plaintiff had prepaid his PMI premiums.

25. Plaintiff then obtained a Broker Provided Opinion as directed and re-submitted his request to cancel PMI in writing. At all times, Plaintiff had a good payment history and was current on the payments required by the terms of the mortgage. Plaintiff also satisfied all other conditions imposed by LoanCare for cancellation of PMI, including submission of the Broker Provided Opinion obtained through LoanCare.

26. In response, LoanCare informed Plaintiff via a letter dated June 23, 2021 that his PMI would be "cancelled/terminated . . . as of 7/1/2021." That letter further explained that "no further premiums, payments, or other fees are due or payable by [Plaintiff] in connection with the PMI."

27. After Plaintiff did not receive his prepaid but unearned premiums as expected, he contacted LoanCare via email to inquire about the status on or about July 14, 2021.

28. LoanCare initially responded to Plaintiff via email but provided no substantive updates over the next several months, even ignoring several follow-up attempts. LoanCare eventually advised Plaintiff of "No Refund" on or about September 23, 2021.

29. Plaintiff then contacted NMIC via email to discuss the same. NMIC informed Plaintiff only that it was in contact with LoanCare regarding the situation.

30. Still not in receipt of his unearned premiums by late October 2021, Plaintiff submitted a qualified written request to LoanCare pursuant to RESPA. Plaintiff notified LoanCare that it had erred by refusing to refund his unearned PMI premiums. Plaintiff also requested documentation regarding his account and specifically his PMI query. Plaintiff had hoped that LoanCare would return the unearned premiums as required by the HPA or, at a minimum, provide him with information so that he could address the issue with the proper entity.

31. Before responding, on or about November 12, 2021, LoanCare sent Plaintiff a notice that servicing of his loan would be transferred to McLean Mortgage.

32. Then, on or about November 19, 2021, LoanCare advised Plaintiff that "no refund [would] be issued" because "the insurance premium with [NMIC] was a non-refundable premium certificate."

33. LoanCare enclosed that document via a screenshot of NMIC's website, which was not previously provided to Plaintiff. Notably, Plaintiff did not sign or agree to the purported non-refundable premium certificate, and it was never disclosed to him by an entity that he would not be entitled to a return of prepaid but unearned PMI premiums.

34. LoanCare also produced Plaintiff's account statements, but no other documents, including LoanCare's communications with NMIC and McLean Mortgage regarding Plaintiff's PMI premiums and the servicing notes for his file.

35. Upon information and belief, LoanCare denied Plaintiff's request for a return of his unpaid PMI premiums because LoanCare does not return prepaid insurance premiums as a matter of policy—even when those premiums are unearned.

36. In addition, or alternatively, also upon information and belief, NMIC denied Plaintiff's request for a return of his unpaid PMI premiums because NMIC does not return prepaid insurance premiums as a matter of policy. By way of example, as evidenced by Plaintiff's experience, NMIC claims that prepaid premiums are "non-refundable"—even when such status is not disclosed much less agreed to by mortgagors like Plaintiff.

37. In any event, NMIC cannot declare prepaid premiums "non-refundable" because the plain language of the statute requires the return of any premiums that are "unearned."

38. As of the date of this filing, Plaintiff has not received a return of the unearned PMI premiums that he prepaid when he purchased his home in July 2020.

## COUNT ONE:
### VIOLATION OF HPA, 12 U.S.C. §§ 4902(f)(1) and 4907
### (Class Claim Against LoanCare)

39. Plaintiff incorporates each of the preceding allegations.

40. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class:

> All individuals who as: (1) mortgagors of loans serviced by LoanCare; (2) prepaid PMI premiums; (3) and cancelled that PMI before the prepaid premiums were fully earned; (4) but were not refunded unearned PMI premiums in full or in part; (5) during the two-year period before this Complaint was filed.

Plaintiff is a putative class member.

41. **Numerosity**. **Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through LoanCare's internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

42. **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether LoanCare violated 12 U.S.C. § 4902(f)(1) by not returning unearned premiums to mortgagors; (2) whether LoanCare refuses to return unearned premiums to mortgagors as a matter of course; and (3) the appropriate amount of statutory damages to be awarded.

43. **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claim is typical of the claim of each putative class member. Plaintiff is also entitled to relief under the same cause of action as the other putative class members. All claims are based on the same facts and legal theories.

44. **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representative because his interests coincide with, and are not antagonistic to, the putative class members' interests. Plaintiff has retained experienced and competent counsel; he intends to continue to prosecute the action vigorously; he and his counsel will fairly and adequately protect the interests of the members of the class; and he and his counsel have no interest that might cause them to not vigorously pursue this action.

45. **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action

is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be nearly impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by LoanCare's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

46. LoanCare violated 12 U.S.C. §§ 4901(f)(1) and 4907 by failing to return to Plaintiff unearned PMI premiums.

47. Upon information and belief, Plaintiff alleges that, as a standard practice, LoanCare denies mortgagor requests for the return of unearned PMI premiums.

48. Upon information and belief, LoanCare's conduct is a part of a broader practice of frequent and persistent noncompliance with 12 U.S.C. § 4902.

49. Plaintiff and the putative class members suffered actual damages because of LoanCare's violations of § 12 U.S.C. § 4902(f)(1), including but not limited to the amounts of the unearned PMI premiums and any interest that would have accrued on those amounts.

50. Based on LoanCare's noncompliance with 12 U.S.C. § 4902(f)(1), Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs under 12 U.S.C. § 4907.

## COUNT TWO:
## VIOLATION OF HPA, 12 U.S.C. §§ 4902(f)(2) and 4907
### (Class Claim Against NMIC)

51. Plaintiff incorporates each of the preceding allegations.

52. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class:

> All individuals who as: (1) mortgagors of loans insured by NMIC; (2) prepaid PMI premiums; (3) and cancelled that PMI before the prepaid premiums were fully earned; (4) but were not refunded unearned PMI premiums in full or in part; (5) during the two-year period before this Complaint was filed.

Plaintiff is a putative class member.

53. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through NMIC's internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

54. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether NMIC violated 12 U.S.C. § 4902(f)(2) by not returning unearned premiums to mortgagors; (2) whether NMIC refuses to return unearned premiums to mortgagors as a matter of course; and (3) the appropriate amount of statutory damages to be awarded.

55. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claim is typical of the claim of each putative class member. Plaintiff is also entitled to relief under the same cause of action as the other putative class members. All claims are based on the same facts and legal theories.

56. **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate class representative because his interests coincide with, and are not antagonistic to, the putative class members' interests. Plaintiff has retained experienced and competent counsel; he intends to continue to prosecute the action vigorously; he and his counsel will fairly and adequately protect the interests of the members of the class; and he and his counsel have no interest that might cause them to not vigorously pursue this action.

57. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be nearly impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by NMIC's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

58. NMIC violated 12 U.S.C. §§ 4901(f)(2) and 4907 by failing to return to Plaintiff unearned PMI premiums.

59. Upon information and belief, Plaintiff alleges that, as a standard practice, NMIC denies mortgagor requests for the return of unearned PMI premiums.

60. Upon information and belief, NMIC's conduct is a part of a broader practice of frequent and persistent noncompliance with 12 U.S.C. § 4902.

61. Plaintiff and the putative class members suffered actual damages because of NMIC's violations of § 12 U.S.C. § 4902(f)(2), including but not limited to the amounts of the unearned PMI premiums and any interest that would have accrued on those amounts.

62. Based on NMIC's noncompliance with 12 U.S.C. § 4902(f)(2), Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs under 12 U.S.C. 4907.

## COUNT THREE:
## VIOLATION OF RESPA, 12 U.S.C. § 2605(e)(2)
### (Individual Claim Against LoanCare)

63. Plaintiff incorporates each of the preceding allegations.

64. As alleged above, Plaintiff submitted a qualified written request to LoanCare in October 2021, and LoanCare received and responded to the request.

65. LoanCare violated 12 U.S.C. § 2605(e)(2) by failing to make appropriate corrections to the Plaintiff's account, including returning to him all unearned PMI premiums.

66. As a result of LoanCare's conduct, Plaintiff suffered concrete and particularized harm, including: the deprivation of money he was entitled to receive; informational injury that made it harder to challenge LoanCare's and NMIC's failures to comply with the HPA; and emotional distress, including aggravation and stress caused by or exacerbated by LoanCare's response.

67. Upon information and belief, LoanCare's conduct was part of a standardized process that it used to respond to all qualified written requests, and hundreds, if not thousands, of consumers experienced the same procedures.

68. In addition, a review of the CFPB's consumer complaint portal reveals that several consumers have complained that LoanCare refuses to properly respond to consumer disputes.

Upon information and believe, discovery will reveal that LoanCare repeatedly failed to properly respond to consumer disputes under 12 U.S.C. § 2605(e).

69. The failure to properly respond to Plaintiff's qualified written request compounded the confusion, frustration, and distress that Plaintiff suffered because of LoanCare's refusal to reimburse him unearned PMI premiums.

70. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare for its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court under 12 U.S.C. § 2605(f).

### COUNT FOUR:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)(C) and 12 C.F.R. § 1024.36(d)
### (Individual Claim Against LoanCare)

71. Plaintiff incorporates each of the preceding allegations.

72. Plaintiff submitted a qualified written request to LoanCare requesting copies of several categories of documents relating to prepaid but unearned PMI premiums.

73. Under Regulation X, LoanCare was obligated to either produce those documents or, if not, to conduct "a reasonable search" for them and provide Plaintiff with "a written notification": (1) stating that it "determined that the requested information [was] not available to" it; (2) providing "the basis for [its] determination; and (3) providing "contact information, including a telephone number for further assistance." 12 C.F.R. § 1024.36(d)(1)(ii).

74. In response to Plaintiff's request, LoanCare produced only account statements and a document purporting to be a non-refundable premium certificate from NMIC. LoanCare failed to provide all other requested documents, including servicing notes.

75. Upon information and belief, LoanCare failed to conduct the mandated "reasonable search" for available information, and in any event, it failed to describe its search as required by Regulation X.

76. Instead, LoanCare claimed in blanket fashion that "[a]ny requested information not provided [was] proprietary and confidential."

77. Plaintiff, however, has no "proprietary" or "confidential" concerns regarding his own request for information pertaining to his loan.

78. LoanCare's refusal to produce documents therefore was pretextual and reflected a pattern and practice of noncompliance with its obligations under RESPA.

79. In addition, the boilerplate nature of LoanCare's response shows a practice of misusing and distorting—as an excuse for violating RESPA—the narrow limitations in Reg. X, 12 C.F.R. § 1024.36(f).

80. Upon information and belief, discovery will reveal that LoanCare's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

81. Upon information and belief, LoanCare's conduct was part of a standardized process that it uses to respond to all qualified written requests, and hundreds, if not thousands, of consumers experienced the same procedures and received the same form response that was sent to Plaintiff.

82. In addition, a review of the CFPB's consumer complaint portal reveals that several consumers have complained that LoanCare refuses to provide documents and information in response to consumer requests.

83. Upon information and believe, discovery will reveal that LoanCare repeatedly failed to properly respond to consumer requests for information under 12 U.S.C. § 2605(e).

84. Because of LoanCare's refusal to provide Plaintiff with his requested information, he was deprived of his legal right to review account documents about his prepaid but unearned

PMI premiums, which hindered his ability to pursue the matter further with LoanCare or with NMIC.

85. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare for its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court under 12 U.S.C. § 2605(f).

WHEREFORE, Plaintiff demands judgment for actual and statutory damages against LoanCare and NMIC; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**STEVE KOVACHEVICH**

By: ␣␣␣␣*/s/ Kristi C. Kelly*␣␣␣␣␣␣␣␣␣␣␣␣␣
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*